**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

MAX JEREMY MOUNTS,

Plaintiff,

v. CIVIL ACTION NO. 2:26-cv-00106

JOE SMITH, et al.,

Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Defendant Michelle McCord's Motion to Dismiss, [ECF No. 8], all three of the claims alleged against her. The Plaintiff Max Jeremy Mounts responded, [ECF No. 12], and the Defendant replied, [ECF No. 13]. For the reasons that follow, the Motion to Dismiss, **[ECF No. 8]**, is **GRANTED in part** and **DENIED in part.**

## I. BACKGROUND

This case arises from Plaintiff's termination of employment after he took an extended medical leave. *See* [ECF No. 1]. In 2023 Plaintiff developed "post-traumatic stress disorder ('PTSD'), major depressive disorder, and anxiety disorder" because of a 2021 shooting while he was employed as a deputy sheriff with the Mingo County Sheriff's Department. *Id.* ¶ 1. Plaintiff saw multiple specialists for his treatment including Defendant neuropsychologist Michelle McCord ("McCord"). *Id.* ¶ 14. She recommended that he take a leave from work of about six months. *Id.* ¶ 15.

By February 2024, Plaintiff submitted his work excuse to take off a period of six months to "Tina Lockard, the Mingo County Sheriff's Department's unofficial HR director." *Id.* ¶ 17. On February 12, 2024, Plaintiff also privately met with Sheriff Joe Smith ("Sheriff Smith") and Chief Field Deputy Allen Mounts—both Defendants in this action and employees of the Mingo County Sheriff's Department. *Id.* ¶ 18. Sheriff Smith became hostile. *Id.* Specifically, Plaintiff alleges:

> 19. Sheriff Smith told Plaintiff he needed to quit seeing doctors and stop taking any medications, and falsely stated that Plaintiff's problem was alcohol rather than mental health, despite there being no factual basis for this accusation.
>
> 20. Sheriff Smith refused Plaintiff's ordered medical leave and attempted to place him in a high school as School Resource Officer after learning of his mental health conditions. Placing an officer suffering from PTSD, major depressive disorder, and anxiety disorder in a school with children was unreasonable and dangerous given Plaintiff's diagnosed conditions.

*Id.* ¶¶ 19–20.

That same day, Sheriff Smith attempted to call one of Plaintiff's doctors to discuss the work excuse. *Id.* ¶ 21. But the doctor did not disclose any information to Sheriff Smith. *Id.* ¶ 22. Sheriff Smith then successfully contacted McCord. *Id.* ¶¶ 22–23. According to Plaintiff:

> 23. . . . Sheriff Smith called Plaintiff and stated that he had spoken with [] McCord. Sheriff Smith told Plaintiff: "I told her that you'd be back in a month and that you miss your family and we both agreed you'd return to work."
>
> 24. After settling in Myrtle Beach, Plaintiff sent multiple emails to [] McCord asking about her conversation with Sheriff Smith. Ms. McCord replied they had conversations "but she knew to draw the line and not violate HIPAA" because Plaintiff had not signed a disclosure agreement.
>
> 25. Plaintiff informed Ms. McCord that this was outrageous and needed to stop immediately. Ms. McCord had never previously advised Plaintiff that Sheriff Smith had called her, nor does it appear she was going to unless Plaintiff contacted her regarding the same. She then asked "so you don't want me to have anymore contact with the sheriff?" - confirming she had ongoing communications with Sheriff Smith about Plaintiff without authorization.

*Id.* ¶¶ 23–25. As for harm, Plaintiff alleges that McCord's "unauthorized disclosures undermined [his] medical treatment, violated his trust . . . , exacerbated his medical health conditions," and contributed to his termination. *Id.* ¶ 48.[1]

Plaintiff filed his Complaint on February 13, 2026, two years and one day after the alleged conversation between McCord and Sheriff Smith. [ECF No. 1]. The Complaint names Sheriff Smith, in his individual and official capacity; the Mingo County Sheriff's Department; the Mingo County Commission; and McCord. *Id.* Of the nine counts in his Complaint, three are alleged against Defendant McCord: invasion of privacy (Count Six); intentional infliction of emotional distress ("IIED") (Count Seven); and breach of fiduciary duty (Count Nine). Now McCord moves to dismiss all claims against her. [ECF No. 8].

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) provides that a party may move to dismiss a claim for "lack of subject-matter jurisdiction." "To challenge subject matter jurisdiction under Rule 12(b)(1), a defendant may contest the veracity of a complaint's allegations in support of jurisdiction." *Carter v. United States*, 694 F. App'x 918, 924 (4th Cir. 2017). The district court should "assume jurisdiction" when "the jurisdictional facts and the facts central to a tort claim are inextricably intertwined." *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009). Alternatively, under Rule 12(b)(1) a defendant may "contend[] that, even assuming that the allegations are true, the complaint fails to set forth facts upon which jurisdiction is proper." *Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013). This alternative argument is what McCord pursues.

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). Generally, a pleading under the Federal

[1] The court limits its recitation of the facts and summary of the Complaint only to the allegations against McCord. The other named Defendants did not move to dismiss the Complaint.

Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). "When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Farnsworth v. Loved Ones in Home Care, LLC*, No. 2:18-CV-01334, 2019 WL 956806, at *1 (S.D. W. Va. Feb. 27, 2019) (citing *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)).

## III. DISCUSSION

McCord argues that the Medical Professional Liability Act ("MPLA"), W. Va. Code § 55-7B-1, *et seq.*, and the statute of limitations support dismissal. [ECF Nos. 8, 9]. Notably, McCord does not argue that Plaintiff failed to allege facts sufficient to state a claim.[2] McCord's Motion to Dismiss makes only two arguments: lack of jurisdiction under the MPLA and the time bar of the statute of limitations.[3] [ECF No. 8]. For the single Rule 12(b)(6) argument, McCord asserts that Plaintiff failed to plead a claim that would survive the time bar of the applicable statute of limitations. As such, the court will limit its Rule 12(b)(6) analysis to the time-bar of Plaintiff claims.

Turning to the two arguments in support of dismissal, I first find that the MPLA does not preclude this court from exercising jurisdiction over the Plaintiff's claims because there is no anchor claim. Second, I find that Plaintiff's invasion of privacy claim is time-barred, but on the face of the Complaint his claims for IIED and breach of fiduciary duty are not time-barred.

[2] *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

[3] McCord argued, "to the extent the Court finds that the MPLA does not apply to Mr. Mounts's claims against Ms. McCord, such claims are nevertheless barred by the applicable statute of limitations." [ECF No. 8, at 1]. *See also* [ECF No. 8, ¶¶ 10–16]. Similarly, McCord's Memorandum of Law does not assert that Plaintiff failed to plausibly allege his claims. [ECF No. 9, at 5] (only mentioning "plausibility" in a rule block outside of the argument). Plaintiff defends the plausibility of his claims in his response, although McCord never challenged it. [ECF No. 12, at 17–19]. But like her motion, McCord does not contest Plaintiff's allegations in her reply. [ECF No. 13].

Accordingly, the motion, **[ECF No. 8]**, is **GRANTED in part** (Count Six against McCord) and **DENIED in part** (remaining counts against McCord).

### A. Medical Professional Liability Act

McCord asserts that Plaintiff's claims are governed by the MPLA, and accordingly this court does not have jurisdiction because Plaintiff failed to "comply[] with the provisions of" the MPLA. [ECF No. 9, at 6–8]; *see also* W. Va. Code § 55-7B-6(a). Those provisions include serving a "notice of claim" on each health care provider 30 days before filing a complaint and obtaining "a screening certificate of merit." W. Va. Code § 55-7B-6(b). Essentially, McCord argues that because Plaintiff's claims are anchored in McCord's mental health evaluation, all claims arising from that evaluation are subject to the pre-suit requirements of the MPLA. If that were true, this court would lack jurisdiction.

In response, Plaintiff admits that the MPLA is broad. [ECF No. 12, at 4–5]. But he argues that there is no anchor claim challenging a particular medical practice or decision, so the MPLA does not govern his claims. *Id.* Plaintiff also argues that the services rendered by McCord were "evaluative" not "prescriptive," that his claims arise in traditional tort law, and alternatively, that the claim is pleaded well enough to survive a motion to dismiss. *Id.* at 8–11.

The MPLA, and its pre-suit notice requirements, applies to any "medical professional liability action against any health care provider." W. Va. Code § 55-7B-6(a). The statute defines "medical professional liability" as

> any liability for damages resulting from the death or injury of a person for any tort or breach of contract based on health care services rendered, or which should have been rendered, by a health care provider or health care facility to a patient. It also means other claims that may be contemporaneous to or related to the alleged tort or breach of contract or otherwise provided, all in the context of rendering health care services.

W. Va. Code § 55-7B-2(i). The Supreme Court of Appeals of West Virginia ("SCAWV") has

interpreted the statute to describe two kinds of claims: "anchor claims," described in the first sentence of the statutory definition, and "ancillary claims," described in the second. *Neidig v. Valley Health Sys.*, 252 W. Va. 149, 155, 919 S.E.2d 52, 58 (2025). The SCAWV further held that if a claimant is unable to plead an anchor claim—that is, a claim "based on health care services rendered,"—it logically follows that no ancillary claims may be appended, and the MPLA cannot govern. *Id. See also State ex rel. W. Va. Univ. Hosps., Inc. v. Scott*, 246 W. Va. 184, 194, 866 S.E.2d 350, 360 (2021).

With the law in mind, the question is whether Plaintiff pleaded an "anchor claim" under the MPLA. Specifically, are any of Plaintiff's claims: invasion of privacy, IIED, or breach of fiduciary duty—all arising from the disclosure of medical information—a sufficient anchor claim under the MPLA?

McCord contends that *State ex rel. Charleston Area Med. Ctr., Inc. v. Thompson* answers this question. *Thompson*, 248 W. Va. 352, 888 S.E.2d 852 (2023). In that case, the SCAWV found that "the MPLA also applies to any alleged unauthorized disclosure of medical information." *Id.* at 360. The quote, in isolation, is compelling but misleading. First, it comes as a concise statement of the court's ultimate holding in this specific case. *Id.* The quote also follows a case-specific recitation of the privacy claims alleged by the plaintiff. *Id.* But most importantly, the court held that the plaintiff's privacy claim was governed by the MPLA because he also asserted a health care anchor claim. The court's later explanation is clarifying:

> Here, we are compelled to find that if a privacy claim was asserted based upon unauthorized disclosure of medical information through placing the fetal remains in a private vehicle with an unauthorized person, it would be contemporaneous and related to the anchor claim—handling of fetal remains as a result of a stillbirth delivery. Therefore, the MPLA applies to the [plaintiffs'] privacy violation claim as well.

*Id.*at 361. So after reading the entire opinion, it is clear that the court did not proclaim a rule about

medical disclosure claims under the MPLA. Rather, *in that case*, the court held that the ancillary privacy claim was governed by the MPLA because an anchor claim already existed.

Here, there is no anchor claim. Plaintiff does not allege any infirmity in McCord's medical evaluation of him. Plaintiff's claims arise from conduct that occurred after his evaluation. And though it is true that Plaintiff and McCord's relationship was medical in nature as was her unauthorized disclosure, that fact alone does not transform every claim Plaintiff might have to one governed by the MPLA. *See Neidig v. Valley Health Sys.*, 90 F.4th 300, 305 (4th Cir. 2024) (The MPLA applies to claims about the health care itself as well as "services encompassing patient care," although the statute "is not limitless." (first quoting *Scott*, 866 S.E.2d at 359; and then quoting *Trivett v. Summers Cnty. Comm'n*, 249 W. Va. 231, 244 n.14, 895 S.E.2d 86, 99 n.14 (2023))).

In a similar case, Judge Volk came to the same conclusion—a plaintiff's privacy claim, untethered to a health care anchor claim, is not governed by the MPLA. *Miller v. United States*, No. 5:23-cv-00453, 2024 WL 2864096, at *9 (S.D. W. Va. June 6, 2024). In *Miller*, Judge Volk reviewed the extensive writings on the MPLA from the Fourth Circuit and the SCAWV. *Id.* at *7–9 (quoting *Neidig*, 90 F.4th at 306–08). And although he noted the MPLA's broad application, he also recognized that it is not limitless. *Id.* at *9. He found that "Plaintiffs [did] not plead any medically tortious conduct (such as medical negligence)," nor did the privacy violation claim involve an "act or treatment performed or furnished, or which should have been performed or furnished . . . during the patient's medical care, treatment or confinement." *Id.*; W. Va. Code §55-7B-2(e).

In this case, Plaintiff pleads no anchor claim. As such, his claims are not governed by the MPLA and this court may exercise jurisdiction. For the reasons already stated and in accordance

with the analysis in *Miller*, the Motion to Dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) is **DENIED**.

**B. Statute of Limitations**

Alternatively, McCord argues that Plaintiff's claims against her should be dismissed because the statute of limitations has lapsed on each of his claims. [ECF Nos. 9, at 9–16; 13, at 6–13]. Specifically, McCord argues that the statute of limitations on Plaintiff's claims began to run when he learned of the conversation between Sheriff Smith and McCord on February 12, 2024. [ECF No. 9, at 10–16]. Plaintiff filed his Complaint on February 13, 2026, two years and one day after he learned of the alleged conversation between Sheriff Smith and McCord. [ECF No. 1]. According to McCord, this exceeds the applicable two-year and one-year periods to bring a claim.

In opposition, Plaintiff argues that, at a minimum, the period for statute of limitations began to run on February 13, 2024, the day after he learned of the alleged disclosure. [ECF No. 12, at 11–13] (citing Fed. R. Civ. P. 6(a)(1)(A)). That would make at least two of his claims timely. Plaintiff further asserts that the statute of limitations began to run later than that argued by McCord because on February 12, 2024, Plaintiff lacked actual knowledge of what McCord disclosed, how it would affect him, and what other contact she and Sheriff Smith previously had. [ECF No. 12, at 12–17].

All three claims alleged against McCord are state law claims. As such, the court will apply the state court analysis for potentially time-barred claims.[4] In *Dunn v. Rockwell*, the SCAWV laid out a five-step analysis:

---

[4] *Rowland v. Patterson*, 852 F.2d 108, 110 (4th Cir. 1988); *Ferguson v. Bayer Cropscience LP*, 468 Fed. App'x. 262, 263 (4th Cir. 2012). S*ee also W.W. McDonald Land Co. v. EQT Prod. Co.*, 983 F. Supp. 2d 790, 809–11 (S.D. W. Va. 2014) (Goodwin, J.); *Lydick v. Erie Ins. Prop. & Casualty Co.*, 358 F. Supp. 3d 552, 560–61 (S.D. W. Va. 2019) (Johnston, J); *Shree Swaminaryan LLC v. Erie Ins. Co.*, No. 2:25-cv-00628, 2026 WL 184208, at *3–4 (S.D. W. Va. Jan. 23, 2026) (Berger, J.); *Paynter v. Gen. Motors LLC*, No. 5:19-cv-00888, 2020 WL 5229355, at *2 (S.D. W. Va. Sept. 1, 2020) (Volk, J.); *Parsons v. Standard Ins. Co.*, 185 F. Supp. 3d 909, 912 (N.D. W. Va. 2016) (Keeley, J.).

> First, the court should identify the applicable statute of limitation for each cause of action. Second, the court (or, if questions of material fact exist, the jury) should identify when the requisite elements of the cause of action occurred. Third, the discovery rule should be applied to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action, as set forth in Syllabus Point 4 of *Gaither v. City Hosp., Inc.*, 199 W.Va. 706, 487 S.E.2d 901 (1997). Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action. Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled. And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine. Only the first step is purely a question of law; the resolution of steps two through five will generally involve questions of material fact that will need to be resolved by the trier of fact.

Syl. Pt. 5, *Dunn v. Rockwell*, 225 W. Va. 43, 46, 689 S.E.2d 255, 258 (2009). At this stage, a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate only when the time bar is "apparent on the face of the complaint." *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005).

For the following reasons, the motion is **GRANTED in part** as it relates to Count Six and **DENIED in part** as it relates to the other counts against McCord. I will take each claim in turn.

1. Count Six: Invasion of Privacy

The tort of invasion of privacy is "governed by the one-year statute of limitations." Syl. Pt. 1, *Slack v. Kanawha Cnty. Hous. & Redevelopment Auth.*, 188 W. Va. 144, 145, 423 S.E.2d 547, 548 (1992) (citing W. Va. Code § 55-2-12(c)); *see also Thompson v. Branches-Domestic-Violence Shelter of Huntington, W. Va., Inc.*, 207 W. Va. 479, 484, 534 S.E.2d 33, 38 (2000); *Blessing v. Sup. Ct. of Appeals of W. Va.*, No. 12–0953, 2014 WL 2208925, at *7 (W. Va. May 27, 2014) (unpublished).

Considering the five-step analysis in *Dunn*, the parties do not dispute the one-year limitation (step one), and Plaintiff does not allege that any Defendant fraudulently concealed facts

to prevent his discovery of the claim (step four). That leaves the date of the cause of action (step two) and application of the discovery rule (step three) or other tolling doctrine (step five) as the significant disputes between the parties. I will address each.

Plaintiff alleges a claim for invasion of privacy,[5] and he specifically alleges that McCord intruded upon his seclusion by disclosing and discussing his private medical affairs to Sheriff Smith. [ECF No. 1, ¶¶ 75, 78–81]. "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." Restatement (Second) Torts § 652B (Intrusion upon Seclusion). *See also Biser v. Mfrs. & Traders Tr. Co.*, 211 F. Supp. 3d 845, 857 (S.D. W. Va. 2016) (Berger, J.); *Bourne v. Mapother & Mapother, P.S.C.*, 998 F. Supp. 2d 495, 508 (S.D. W. Va. 2014) (Faber, J.).

As alleged, on February 12, 2024, Plaintiff learned that Sheriff Smith had talked to McCord about the duration of his leave from work. [ECF No. 1, ¶ 22–23]. And this conversation is the basis of the claims against McCord. Plaintiff alleges that because of her disclosure, his medical treatment and health suffered, his trust in the therapeutic relationship was violated, and his employment was terminated. [ECF No. 1, ¶ 48].

The problem for Plaintiff is that this conversation took place two years before he filed his Complaint, long after the one-year statute of limitations ran. Even taking all of the allegations as true, Plaintiff offers no evidence of McCord's intrusion within the one-year period before he filed his Complaint. It is true that "[a]fter settling in Myrtle Beach, Plaintiff sent multiple emails to []

---

[5] "'An "invasion of privacy" includes (1) an unreasonable intrusion upon the seclusion of another; (2) an appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; and (4) publicity that unreasonably places another in a false light before the public.' " Syl. Pt. 4, *State ex rel W. Va. Univ. Hosps. – East, Inc. v. Hammer*, 246 W. Va 122, 866 S.E.2d 187 (2021) (quoting Syl. Pt. 8, *Crump v. Beckley Newspapers, Inc.*, 173 W. Va. 699, 320 S.E.2d 70 (1983)).

McCord asking about her conversation with Sheriff Smith," and that this occurred some time after the conversation. [ECF No. 1, ¶ 24]. But Plaintiff does not allege when it occurred, and the face of the Complaint, even taking all of Plaintiff's allegations as true, does not answer that question. As such, the court can only conclude that the elements of the claim were satisfied on or sometime after February 12, 2024, but certainly after the one-year statute of limitations had run.

Still, under the discovery rule (step three of the five-step analysis), Plaintiff asserts that his knowledge of the extent of his injuries tolls the accrual date of his claim. [ECF No. 12, at 14]. The SCAWV has held that, under the discovery rule, the statute of limitations

> "…begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury."

Syl. Pt. 3, *Dunn*, 225 W. Va. at 46 (quoting Syl. Pt 4, *Gaither v. City Hosp., Inc.*, 199 W. Va. 706, 708, 487 S.E.2d 901, 903 (1997)). The discovery rule is an objective test, that is, the court must ask "whether a reasonable prudent person would have known, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action." Syl. Pt. 4, *Dunn*, 225 W. Va. at 46. The person need not know the legal basis for his claim, rather, he is charged with knowledge of the facts giving rise to his claim. *Id.*

Here, Plaintiff clearly alleges that McCord had disclosed private medical information to Sheriff Smith on February 12, 2024. [ECF No. 1, ¶¶ 22–26]. On that very day, Plaintiff had all of the information: (1) his right to privacy was violated, (2) McCord disclosed private medical information to Sheriff Smith, and (3) because of that unauthorized disclosure his privacy had been invaded. The interference with his leave from work was also apparent as Sheriff Smith "[l]ater that same day" told Plaintiff that he and McCord "'agreed'" a one-month leave as opposed to the six-

month leave was appropriate. *Id.* ¶ 23.

But Plaintiff argues that he did not know the extent of his injury (adverse employment decision, mental health decline, disability benefit denial) until later. This, however, does not change when he first learned of the facts leading to his claim—McCord intruded upon the seclusion of his private medical affairs. The purpose of the discovery rule "is to remedy the unjust and unreasonable effects of strict application of the statute of limitations in cases where the plaintiff is unaware of his injury until the statutory period has expired." *Slack*, 188 W. Va. at 149. In this case Plaintiff was aware of this violation and his claim on February 12, 2024. The discovery rule cannot toll the accrual.

In considering step five of the statute of limitations analysis, Plaintiff finally asserts that the "continuing tort" doctrine additionally tolls the accrual time of his claim. Plaintiff argues that because his Complaint alleges "a pattern of ongoing wrongful concealment by Defendant McCord, continued failure to disclose the extent of her unauthorized communications, and continued downstream harm to Plaintiff's employment status," his claim tolled through 2025 and 2026. [ECF No. 12, at 15]. The Complaint does not support that.

When a tort is continuous or repeatedly injurious, "the cause of action accrues at and the statute of limitations begins to run from the date of the last injury or when the tortious overt acts or omissions cease." Syl. Pt. 3, *Roberts v. W. Va. Am. Water Co.*, 221 W. Va. 373, 375, 655 S.E.2d 119, 121 (2007) (quoting Syl. Pt. 11, *Graham v. Beverage*, 211 W. Va. 466, 566 S.E.2d 603 (2002)). It is true that Plaintiff alleges that McCord disclosed his medical information on February 12, 2024, and in taking the facts alleged as true, McCord continued to discuss Plaintiff's private medical affairs with Sheriff Smith. [ECF No. 1, ¶¶ 22–26]. Plaintiff, however, does not allege "a *pattern* of ongoing wrongful concealment," nor does he allege when *any other* additional

conversations took place—only that they did. This is insufficient to support application of the continuing tort doctrine.[6]

Because it is clear on the face of the Complaint that McCord's unauthorized disclosure occurred on February 12, 2024, and Plaintiff has not alleged sufficient facts to support any tolling doctrine, his claim of invasion of privacy is time-barred. I find that Count Six, invasion of privacy, against Defendant McCord is time-barred under the one-year statute of limitations. McCord's Motion to Dismiss, **[ECF No. 8]**, is **GRANTED in part** as it relates to Count Six against McCord.

2. Count Seven: Intentional Infliction of Emotional Distress

A claimant has two years, as opposed to the one-year limitation for invasion of privacy, to file a claim for IIED. W. Va. 55-2-12(b); *see also Richards v. Walker*, 244 W. Va. 1, 8, 813 S.E.2d 923, 930 (2018). To prevail on a claim for IIED, a plaintiff must show

> "(1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it."

Syl. Pt. 11, *Zsigray v. Langman*, 243 W. Va. 163, 166, 842 S.E.2d 716, 719 (2020) (quoting Syl. Pt. 3, *Travis v. Alcon Labs., Inc.*, 202 W. Va. 369, 371, 504 S.E.2d 419, 421 (1998)).

Plaintiff alleges that McCord's disclosure of his medical information was "extreme and outrageous in betraying the trust of a vulnerable patient suffering from PTSD, major depression, and anxiety, engaging in unauthorized communications with Plaintiff's employer about confidential medical information, undermining" her own recommended course of treatment, and

---

[6] *Richards v. Walker*, 244 W. Va. 1, 8, 813 S.E.2d 923, 930 (2018) (affirming a circuit court decision to not apply the continuing tort doctrine when a claim "arose out of a single incident, and without any further wrongful acts by defendant [], the continuing consequential damages of that single act are insufficient to constitute a continuous tort and thereby toll the statute of limitations").

causing him severe emotional distress. [ECF No. 1, ¶¶ 86–88]. McCord argues that all of Plaintiff's claims against McCord arise from a single conversation on February 12, 2024. According to McCord, Plaintiff's Complaint, filed on February 13, 2026, is exactly one day late.

The Complaint alleges just a little bit more, however, and that little bit is enough to survive the time bar. As already discussed, the Complaint alleges that one conversation occurred on February 12, 2024. [ECF No. 1, ¶¶ 22–23]. But the Complaint also alleges that sometime after that date—now certainly within the applicable two-year statute of limitations—McCord had other, further conversations with Sheriff Smith.[7] *Id.* ¶¶ 24–26. Plaintiff alleges that conversations continued until he informed McCord that she could no longer discuss his evaluation with Sheriff Smith. [ECF No. 1, ¶¶ 22–26, 78–80, 86]. And Plaintiff asserts that those continued conversations caused him severe emotional distress. *Id.* ¶ 86.

These factual allegations, taken as true as the court must at the motion to dismiss stage, allege enough to survive the statute of limitations.[8] Therefore the court does not need to address the remaining steps for statute of limitations analysis. The Motion to Dismiss, **[ECF No. 8]**, is **DENIED in part** as it relates to Count Seven against McCord.

3. Count Nine: Breach of Fiduciary Duty

The statute of limitations for breach of fiduciary duty is two years. To prevail on a claim

---

[7] The court recognized these same allegations in the Count Six invasion of privacy claim, but because of the one-year statute of limitations and Plaintiff's failure to allege any more specific dates other than "some time later," it was clear from the Complaint that his claim for invasion of privacy was time-barred. Here, IIED and breach of fiduciary duty have two-year statutes of limitations, so an allegation of liable conduct that occurred after the last possible date (February 12, 2024) is sufficient to survive the time bar.

[8] The parties devote some briefing to the applicable state or federal rules for counting days. Under Plaintiff's calculations pursuant to the Federal Rules of Civil Procedure, he filed his Complaint within the statute of limitations even if the date of the first conversation is the start of accrual. Under McCord's calculations pursuant to state code, Plaintiff filed his Complaint one day late. I find it unnecessary to address this dispute because the Plaintiff has plausibly alleged that *after* February 12, 2024, McCord engaged in discussions with Sheriff Smith about Plaintiff's private medical affairs. Under either calculation argued by the parties, Plaintiff's claim is timely as alleged. Of course, discovery should illuminate the content, context, duration, and nature of McCord's alleged other conversations. Under a different standard and with the benefit of discovery, McCord may again raise the statute of limitations argument.

for breach of fiduciary duties, a plaintiff must show "(1) the existence of a fiduciary relationship; (2) a breach; and (3) damage proximately caused by the breach." *Nat. Credit Union Administration Board v. Bailey*, No. 1:09-cv-00724, 2016 WL 3951209, at *6 (S.D. W. Va. July 20, 2016) (citing cases).[9]

Plaintiff alleges that the relationship between him and McCord was psychologist-patient, "fiduciary in nature, requiring strict confidentiality." [ECF No. 1, ¶¶ 94–98]. Specifically, McCord breached her duty when she "disclos[ed] confidential medical information to Plaintiff's employer without authorization" resulting in Plaintiff's "severe emotional distress, loss of trust in healthcare providers, adverse employment consequences," and a decline in his mental health. *Id.* ¶¶ 97–98.

Just like Count Seven, the arguments of the parties are the same: McCord urges this court to find that the accrual date for Plaintiff's claim is February 12, 2024, and Plaintiff argues that his allegations of other continued conversations between McCord and Sheriff Smith are sufficient. At this stage, and because the time bar is not apparent on the face of the Complaint, I find that the breach of fiduciary duty claim is timely. Therefore, the court does not need to address the remaining steps for statute of limitations analysis. The Motion to Dismiss, **[ECF No. 8]**, is **DENIED in part** as it relates to Count Nine against McCord.

## IV. CONCLUSION

For the foregoing reasons, the Motion to Dismiss, [ECF No. 8], is **GRANTED in part** as it relates to Count Six against Defendant Michelle McCord and **DENIED in part** as to all other counts.

[9] S*ee also Doe v. Logan Cnty. Bd. of Educ.*, 242 W. Va. 45, 53 n.4, 829 S.E.2d 45, 53 n.4 (2019) (Workman, J., concurring) (citing *State ex rel. Affiliated Const. Trades Found. v. Vieweg*, 205 W.Va. 687, 701, 520 S.E.2d 854, 868 (1999) (Workman, J., concurring) (observing that "[a]lthough this Court has not previously identified precisely the elements of a cause of action for a breach of a fiduciary duty, courts have held that the elements of such a cause of action are the existence of the fiduciary relationship, its breach, and damage proximately caused by that breach")).

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER: September 2, 2026

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE